JOHN F. BOST, Individually and as Adm'r of the Estate of Robert T. Bost, Deceased, *et al.*, Plaintiffs-Appellees, *v.* PAULSON'S ENTERPRISES, INC., d/b/a Paulson's Lounge, *et al.*, Defendants.—(ALLSTATE INSURANCE COMPANY, Intervenor-Appellant.)

Second District (1st Division) No. 74-343

Opinion filed February 24, 1976.

John F. Early, of Schwarz & Early, of West Dundee, for appellant.

Geister, Schnell, Richards & Brown, of Elgin, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This case concerns the subrogation rights of the intervening appellant, Allstate Insurance Company (hereinafter Allstate). At issue is the construction of a certain trust agreement entered into between Thomas Peabody, father of the injured minor Lynn Peabody, and Allstate.

On June 18, 1971, Robert T. Bost was driving his grandfather's car and Lynn Peabody was his passenger. Edward Bost, owner of the vehicle, was insured by Allstate. The vehicle was involved in a head-on collision with a vehicle being driven by George Skinner. As a result of this collision Robert T. Bost died and Lynn Peabody suffered severe injuries. Under section II of Edward Bost's policy, "Protection Against Bodily Injury by Uninsured Automobiles," Lynn Peabody, as a passenger in the insured vehicle was, apparently, an insured. The policy further provided that in the event of any payment under the uninsured motorist section of the policy:

> "1. Allstate shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the insured against *any owner or operator of an uninsured automobile.*" (Emphasis added.)

On November 16, 1971 Thomas Peabody, father of Lynn Peabody who was then a minor, entered into the trust agreement under consideration herein as set forth below. The italicized portion of the trust agreement below quoted was added to the trust agreement form by Lynn Peabody's attorney.

"                                              Date    November 16, 1978
                          Lynn Peabody
(Name of Insured or Parent or Guardian or Surviving Spouse)
hereinafter referred to as the Trustee, having sustained damages be-
cause of bodily injury, sickness, or disease or death from an event
which occurred on 6-18-71, as a result which claim has been made
                          (Date)
to Allstate Insurance Company hereinafter referred to as the Beneficiary,
      (Name of Company)
under its policy 02 461 242 and in consideration of the payment to be
                          (Policy No.)
made pursuant to said Bodily Injury Benefit Coverage, it is hereby
agreed that the Trustee will hold for the benefit of the Beneficiary all
rights, claims, and causes of action which the Trustee has or may have
against any person or persons, organization, association or corporation
other than the Beneficiary because of bodily injury, sickness, or disease
or death which is the subject of the claim made against the Beneficiary,
*pursuant to the provisions of the policy.*

The Trustee agrees to take, through any representative designated by
the Beneficiary, such action as may be necessary or appropriate to re-
cover the damages suffered by the Trustee from any person or persons,
organization, association or corporation other than the Beneficiary who
may be legally liable therefor, such action to be taken in the name of
the Trustee, the Beneficiary to pay all costs and expenses in connection
therewith. It is further agreed that any monies recovered by the Trustee
as a result of judgment, settlement, or otherwise will be held in trust
and paid to the Beneficiary, provided, however, any sum recovered in
excess of the total amount paid by the Beneficiary to the Trustee under
the terms of the above-mentioned policy, shall be retained by the Trus-
tee for his own use and benefit.

                              /s/ Thomas Peabody
                          (Insured or Parent or Guardian or
                              Surviving Spouse)

Accepted:

_____
   (Company-Beneficiary)
By                              "

On December 2, 1971, the Circuit Court of Kane County issued
letters of guardianship to Thomas Peabody as guardian of the person
and estate of Lynn Peabody, the minor. On December 11, 1971, Allstate
paid the sum of $9,000 to Thomas Peabody as guardian of the estate

of Lynn Peabody, pursuant to the settlement agreement. On December 16, 1971, the agreement to pay $9,000 to Thomas Peabody as guardian of the estate of Lynn Peabody was submitted for approval in the Circuit Court of Kane County in the estate of Lynn Peabody and the court entered an order approving the settlement in the amount of $9,000, plus $500 for medical payment coverage.

On November 29, 1971, a multicount complaint was filed, and subsequently amended, by Thomas Peabody as father and next friend of Lynn Peabody, a minor, among others, stating a claim under the Dram Shop Act (Ill. Rev. Stat. 1971, ch. 43, par. 135) for damages based upon the injuries suffered in the June 18, 1971, collision. The amended complaint was subsequently further amended to show Lynn Peabody Bero as plaintiff upon Lynn Peabody reaching her majority and marrying. On July 27, 1973, pursuant to a settlement stipulation, Lynn Peabody Bero obtained a judgment for $15,000.

On August 24, 1973, Allstate filed a motion for leave to intervene in the Dram Shop action and also filed a petition, subsequently amended, seeking "its equitable portion" of the judgment obtained by Lynn Peabody Bero. Allstate was granted leave to intervene and Lynn Peabody Bero filed her answer thereto. On July 12, 1974, the court entered an order denying Allstate's claim, finding, *inter alia*, that the trust agreement involved herein "was not legally sufficient to support said intervenor's claim against the proceeds of said judgment herein." It is from this order that Allstate presently appeals.

On appeal, Allstate argues that it is entitled to $9,500, the amount it paid to Thomas Peabody as guardian of the estate of Lynn Peabody, on its subrogation claim against the judgment obtained by Lynn Peabody Bero. Allstate contends (1) that it should be entitled to recover under the common law concept of subrogation unless the trust agreement operates to negate such rights; (2) that the trust agreement is not invalid either because Lynn Peabody did not sign the agreement or because Thomas Peabody lacked authority to sign the agreement in any capacity other than as Lynn Peabody's father; (3) the fact that the judgment was entered in favor of Lynn Peabody Bero, individually, instead of in favor of the estate of Lynn Peabody or in favor of Thomas Peabody on behalf of Lynn Peabody, does not render the recovery beyond the terms of the trust agreement; and (4) that the trust agreement, despite the addition of the phrase "pursuant to the provisions of the policy," should be construed so as to extend Allstate's subrogation rights to the present situation rather than to limit same to the terms of the policy alone.

Lynn Peabody Bero argues that the right of subrogation, as any

other legal or equitable right, may be qualified or extinguished by contract. Under the original policy Allstate had the right to recover to the extent of its payments against *any owner or operator* of an uninsured automobile from which the insured recovered for her injuries. Allstate attempted to broaden this subrogation right by the trust agreement to allow it to recover to the extent of its payments against *any person or persons, organization, association or corporation* from which the insured recovered for her injuries. However, by allowing the insertion of the phrase "pursuant to the provisions of the policy" into the trust agreement, Allstate waived its right to recover the amount of its payment from the judgment which she received from the Dram Shop Act defendants.

■■ Subrogation has been defined as the substitution of another person in the place of a claimant to whose rights he succeeds in relation to the debt or claim asserted which has been paid by him involuntarily. (*Dunlap v. Peirce* (1929), 336 Ill. 178, 168 N.E. 277). The doctrine of subrogation is broad enough to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter. (*First National Bank v. Heatherly* (1972), 8 Ill. App. 3d 1073, 291 N.E.2d 280.) The right of subrogation for payment by an innocent party exists as a matter of law and independent of contract (*Central National Bank & Trust Co. v. Central Illinois Light Co.* (1965), 65 Ill. App. 2d 287, 212 N.E.2d 489) and, in the case of conventional subrogation, is founded upon an express or implied agreement. (See 73 Am. Jur. 2d *Subrogation* §9 (1974).) In the instant case we find that Allstate's right to a share of the proceeds of the judgment obtained by Lynn Peabody Bero from the Dram Shop Act defendants may be founded upon the terms of the original policy and the separate trust agreement as construed herein.

■■ Turning then to the contentions of Allstate with respect to the validity of the trust agreement, we find first that the fact that Lynn Peabody did not sign the agreement is of no consequence. Had Lynn Peabody executed the trust agreement individually as a minor, she could have avoided the legal effect of the agreement upon reaching her majority. (See *Dixon National Bank v. Neal* (1955), 5 Ill. 2d 328, 125 N.E.2d 463.) Thus, to have required her to sign the trust agreement would have required the doing of a useless act. Second, the fact that Thomas Peabody signed the trust agreement only as parent and without authorization from the probate court does not, under the instant facts, require that we find the agreement ineffective as to the proceeds of Bero's judgment. As noted above, Thomas Peabody signed the trust agreement on

November 16, 1971, and was not appointed guardian of the person and estate of Lynn Peabody until December 2, 1971. Although the probate court approved the settlement of Bero's claim against Allstate for $9,500 and authorized Thomas Peabody to execute and deliver a release and discharge to Allstate upon receipt of the sum, it did not specifically approve the trust agreement. To allow Lynn Peabody Bero to avoid the trust agreement because at the time it was signed her father had not yet been appointed guardian of her person and estate, would allow her to perpetrate a fraud on Allstate. Furthermore, although parents are not agents for their children (*McDonald v. City of Spring Valley* (1918), 285 Ill. 52, 120 N.E. 476), the law makes parents the natural guardians of their children. (*McConnell v. McConnell* (1931), 345 Ill. 70, 177 N.E. 692.) Thomas Peabody thus signed the trust agreement as natural guardian of Lynn Peabody and, when the probate court approved the settlement which he entered into, the court, in essence, ratified the November 16 trust agreement which was a part of the settlement agreement. We, therefore, find that Lynn Peabody Bero cannot avoid the trust agreement on the ground that her father signed the agreement prior to his appointment as her legal guardian.

■■ In her brief, Bero also argues that the trust agreement should be declared invalid because of a lack of consideration to support the expansion of Allstate's rights under the original policy. However, the settlement agreement, of which the trust agreement was a part, was supported by Allstate's agreement to pay and its payment of $9,500, its implied agreement to not contest Bero's claim, Bero's agreement to not demand that the matter be submitted to arbitration, and her agreement to relinquish her claim against Allstate. Thus, the trust agreement was supported by consideration. See Corbin on Contracts §187 (1963).

■■ We turn then to the final, and perhaps the basic question presented herein, which concerns the legal sufficiency of the trust agreement to extend Allstate's subrogation rights. It is elementary that in construing contracts:

> "The primary object in construing a contract is to give effect to the intention of the parties involved. Their intent must be determined solely from the language used when no ambiguity in its terms exists, and a strict construction of that language which reaches a different result from that intended by the parties should not be adopted. [Citation.]" (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888.)

It is also to be noted that a reasonable construction of a contract is preferred to an unreasonable one (*Marshall Field & Co. v. J. B. Noelle*

*Co.* (1967), 81 Ill. App. 2d 409, 226 N.E.2d 454), and that vague or ambiguous contract language is construed most strongly against the drafter. *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 295 N.E.2d 148. ■■ In applying these rules to the instant case, we find that the language "pursuant to the provisions of the policy" to be ambiguous and must, therefore, be construed against Bero, on whose behalf the language was inserted. In considering the extrinsic circumstances in determining the intent of the parties (see, *e.g., Joseph v. Joseph* (1973), 15 Ill. App. 3d 714, 305 N.E.2d 19), we find that Allstate unsuccessfully attempted to amend its policy to provide in substance for the expansion of its subrogation rights to "any person or organization legally responsible" for Bero's injuries by way of an amendatory endorsement of the policy. The trial court found that Allstate had failed to prove that the insured received this amendatory endorsement and Allstate seeks no review of this decision. We further find that the trust agreement was executed as a part of a settlement of Bero's claim against Allstate. To accept Bero's contention that it was the intent of the parties to the trust agreement that Allstate's subrogation rights would be determined by the policy alone would amount to a finding that the parties intended to effect no change in their rights by the execution of the trust agreement. In other words, if the intent of the parties to the trust agreement were to determine Allstate's subrogation rights by the original policy, then why was the trust agreement executed at all? The reason is clear: the parties intended that Allstate's subrogation rights would be extended by the trust agreement, but Bero's attorney attempted to avoid the objective of the trust agreement by the insertion of the vague language herein construed. As stated in 12 Ill. L.&Pr. *Contracts* §212 (1955):

> "A contract is to be construed in accordance with the intent of all the parties, and not the secret intent of one of them. One party cannot loosely or artfully insert into an agreement words of doubtful meaning, and then call on the court to give them such a construction as the inserter intended unless they will fairly bear that interpretation."

It is apparent that the language inserted by Bero's attorney cannot be said to fairly bear out the interpretation which Bero contends in light of the other language of both paragraphs of the agreement and the circumstances surrounding the execution of the trust agreement. We therefore find that the trust agreement is legally sufficient to extend Allstate's subrogation rights to the proceeds of Bero's judgment from the Dram Shop Act defendants.

Accordingly, the judgment appealed from is hereby reversed and the

cause remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

SEIDENFELD, P. J., and HALLETT, J., concur.